**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **BRIAN SEARS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | | **Case No. ELH-13-3389** |
| | * | |
| **SAILING VESSEL "SMITHEREENS,"** | * | |
| | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned for review of plaintiff's motion for default judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6.  (ECF No. 18.)  Plaintiff brings this suit *in rem* under the Federal Maritime Lien Act ("FMLA"), 46 U.S.C. § 31301, *et seq.* to enforce a maritime lien by foreclosure.  Plaintiff asks the court to enter default judgment on its claim for a maritime lien in the amount of $29,469.91 for the provision of "necessaries" to the defendant vessel for the period from February 1, 2011 until November 15, 2013, when the vessel was arrested.  Plaintiff also seeks $7,480.00 in attorney's fees.  Plaintiff separately requests a lien for *custodia legis* expenses in the amount of $3,494.41 incurred by plaintiff after he was appointed substitute custodian on November 15, 2013, following the vessel's arrest.  Plaintiff further asks this court to order a judicial sale of the vessel in order to allow him to recover those costs.  This court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333, and may enter default judgment *in rem* pursuant to Local Admiralty Rule (c)(4).  This court may order the sale of the vessel pursuant to

the FMLA.

Currently pending is plaintiff's Motion for Entry of Default Judgment and Judicial Sale of Vessel ("Motion").  (ECF No. 17.)  No response was filed.  No hearing is deemed necessary. See Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6.  For the reasons discussed herein, I respectfully recommend that plaintiff's Motion (ECF No. 17) be GRANTED IN PART AND DENIED IN PART and that relief be awarded as set forth herein.

### I.   DEFAULT JUDGMENT

#### A.  Standard for Entry of Default Judgment

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).  It remains for the court, however, to determine whether these unchallenged factual allegations constitute a legitimate cause of action.  Id.   In order to grant default judgment in *in rem* admiralty proceedings, the court must also find that the notice requirements of the Local Admiralty Rules have been complied with. (LAR (c)(3).)  If the court determines that liability is established, the court must then determine the appropriate amount of damages.  Id.  The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.  See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999).  The court may make a determination of damages without a hearing, so long as there is adequate evidence in the record, such as detailed affidavits or documentary evidence, for the award.  See, e.g., Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001).

#### B.  Defendant's Liability

I have reviewed plaintiff's First Amended Verified Complaint in Rem to Foreclose a

Maritime Lien ("First Amended Complaint") (ECF No. 5), and find that plaintiff has stated a

cause of action under the FMLA based on his provision of "necessaries" from February 1, 2011

until November 15, 2013, when the defendant vessel was arrested.  Further, I find that plaintiff

has complied with the procedural requirements of the Local Admiralty Rule (c)(3) for the entry

of default judgment.

On November 14, 2013, plaintiff filed his First Amended Complaint to enforce a

maritime lien against the vessel *in rem*. (ECF No. 5.)  According to the First Amended

Complaint, on or about December 2010, Tom Vanhuben made an oral agreement with plaintiff

for the storage of defendant sailing vessel "Smithereens," HIN# HUN45248E001 ("vessel") at

plaintiff's marina located at 721 Chester Ave., Annapolis, MD 21403 for a rate of $475.00 per

month. (ECF No. 5, at ¶ 8.)  The vessel is a 44.5' 2000 Hunter sailboat.  (ECF No. 5.)  The title

owner of the vessel is Lyn A. Vanhuben, Mr. Vanhuben's wife.  (ECF Nos. 5, at ¶7, 14-2.)

Plaintiff also orally agreed to store a 13' Boston Whaler, the vessel's tender, for $125.00 per

month.  (Id., at ¶ 8.)  Plaintiff later reduced the oral agreement to writing in a "Slip Lease

Agreement" and delivered it to Mr. Vanhuben. (Id., at ¶ 9.)  The Slip Lease Agreement contained

additional terms, including late fees, interest, court costs, and attorney's fees in the event of non-

payment and enforcement of the contract.  (ECF No. 1-1.)[1]  Plaintiff began to store the vessel at

his marina on or about February 1, 2011. (ECF No. 5, at ¶ 11.)  In March 2011, before he signed

the Slip Lease Agreement, Mr. Vanhuben passed away. (ECF No. 5, at ¶9.)  Since February

2011, plaintiff has provided storage for the vessel and expended labor and materials to maintain

the vessel while it remained at plaintiff's marina. (Id., at ¶ 13.)   Plaintiff has made unsuccessful

---

[1] The undersigned notes that plaintiff attached exhibits A, Slip Lease Agreement, and B, Itemization of Vessel
Expenses, to its Complaint (ECF No. 1) on November 13, 2013.  Plaintiff filed his First Amended Complaint on
November 14, 2013.  While exhibits A and B were not attached to the First Amended Complaint, plaintiff refers to
those exhibits in the First Amended Complaint.

efforts to settle the debt for his services with Mrs. Vanhuben, who is currently not responding to Mr. Sears' phone calls or registered mail. (Id., at ¶ 12.)

Plaintiff filed the First Amended Complaint on November 14, 2013. (ECF No. 5.) After defendant failed to answer or otherwise defend the First Amended Complaint within twenty-one days, plaintiff properly moved, pursuant to Federal Rule of Civil Procedure 55(a), for an entry of default. (ECF No. 14.) The Clerk of this court entered an Order of Default on March 13, 2014. (ECF No. 15.) On April 15, 2014, plaintiff filed the pending Motion (ECF No. 17), and no response has been filed. Before granting plaintiff's Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b), the court must find that (1) the plaintiff has stated a legitimate cause of action; and (2) plaintiff has complied with the procedural requirements of Local Admiralty Rule (c)(3).

## 1. Legitimate Cause of Action

In order to state a legitimate cause of action giving rise to a maritime lien under the FMLA, plaintiff must demonstrate that he has (1) provided "necessaries" to a vessel (2) on the order of the vessel's owner or a person authorized by the owner. 46 U.S.C. § 31342. The statutory definition of "necessaries" includes repairs, supplies, towage, and the use of a dry dock or maritime railway. Id. Courts have further liberally construed the term "necessaries" to include "what is reasonably needed in the ship's business". Board of Comm'rs of the Orleans Levee District v. M/V Belle of Orleans, 535 F.3d 1299, 1314 (11th Cir. 2008). "Necessaries" has been interpreted to include dockage and wharfage costs. Ceres Marine Terminals, Inc. v. M/V Harmen Oldendorf, 913 F. Supp. 919, 927 (D. Md. 1995). As more fully discussed below, the term "necessaries" also includes maintenance, insurance, and prejudgment interest. 46 U.S.C. §31301(4); Loginter S.A. y Parque Industrial Agua Profunda S.A. UTE v. M/V Nobility, 177 F.

Supp. 2d 411, 421 (D. Md. 2001); <u>Flagship Grp., Ltd. v. Peninsula Cruise, Inc.</u>, 771 F. Supp. 756, 759 (E.D. Va. 1991). Plaintiff's First Amended Complaint demonstrates that plaintiff has provided necessaries to the defendant vessel on the order of its owner.  First, according to plaintiff's First Amended Complaint (ECF No. 5), plaintiff has provided dockage to defendant vessel and its tender since February 1, 2011.  (ECF No. 5, ¶ 11.)  During this time, plaintiff has expended labor and materials for defendant vessel's upkeep, including installing new batteries and pumping the vessel's bilge.  (ECF No. 5, ¶ 13.) The dockage and maintenance services provided to defendant by plaintiff are clearly "necessaries" within the meaning of the FMLA. <u>Ceres</u>, at 927; 46 U.S.C. §31301(4).  The First Amended Complaint also adequately states the second requirement for establishing a legitimate cause of action under the FMLA.  (ECF No. 5, ¶ 8.)  According to plaintiff's First Amended Complaint, defendant vessel was owned by Lyn A. Vanhuben and Tom Vanhuben, with Ms. Vanhuben as the owner of record.  (ECF No. 5, ¶ 7.) Plaintiff entered into an oral contract with Mr. Vanhuben for the dockage of defendant vessel. Therefore, plaintiff provided "necessaries" on the order of Mr. Vanhuben, an owner of the vessel.  Accordingly, accepting plaintiff's well-pleaded factual allegations, I find that plaintiff has stated a legitimate cause of action for a maritime lien pursuant to 46 U.S.C. § 31342.  <u>Ryan</u>, 253 F.3d at 780-81.

## 2. <u>Procedural Requirements of the Local Admiralty Rules</u>

Local Admiralty Rule (c)(3)(a)(i) details additional procedural requirements that must be satisfied prior to the entry of default judgment in an action *in rem*.  A party seeking default judgment *in rem* must satisfy the court that due notice of the action and arrest of the property has been given by (1) publication in accordance with LAR(c)(2);  (2) service of the complaint and warrant of arrest upon the Marshal, substitute custodian, master, or other person having custody

of the property; and (3)  by  mailing notice to every person who has not appeared in this action

and is known to the party seeking the default judgment to have an ownership interest in the

property.  Here, as required, plaintiff has published notice of the arrest in the Daily Record in

accordance with LAR(c)(2). (ECF No. 14-1.)  Plaintiff has served the complaint and warrant of

arrest upon the Marshal and the vessel.  (ECF No. 13.)  Plaintiff has mailed notice to Lyn

Vanhuben, the owner of record of the vessel, at all of Mrs. Vanhuben's known addresses (ECF

No. 17-1.)  Finally, plaintiff has given notice to Onset Bay II, Corp. and Community National

Bank, who are shown to have recorded liens on the vessel.  (ECF Nos. 14-2, 14-3.) I find that

plaintiff has satisfied Local Admiralty Rule (c)(3)(a)(i).  In sum, plaintiff has demonstrated that

he is entitled to a default judgment against defendant vessel for the provision of "necessaries"

from February 1, 2011 until November 15, 2013.

     **C.  Damages**

     Having determined that plaintiff has proven liability, the undersigned now undertakes an

independent determination of the damages to which plaintiff is entitled.  See Credit Lyonnais,

183 F.3d at 154 (2d Cir. 1999).  I have reviewed the facts alleged in plaintiff's First Amended

Complaint, verified by plaintiff, as well as the "Itemization of Vessel Expenses" (ECF No. 1-2),

referred to in the First Amended Complaint, which lists costs incurred by plaintiff from February

2011 until November 1, 2011. Plaintiff seeks damages for the following: (1) dockage; (2)

maintenance; (3) insurance; (4) legal costs; and (5) prejudgment interest.

     Plaintiff is entitled to a maritime lien against the defendant vessel to recover the cost of

"necessaries" provided to the vessel. 46 U.S.C. § 31342.  As to the first item of damages sought,

dockage fees have been found to be a "necessary." Ceres, at 927.  Plaintiff provided dockage to

defendant vessel at a rate of $475.00 per month from February 2011 until November 2013, when

plaintiff was appointed substitute custodian.  (ECF Nos. 5, at ¶ 8, 10.)  Accordingly, plaintiff is entitled to damages in the amount of $16,150.00 for this 34-month period.  Plaintiff also seeks an additional $125.00 per month for a 31-month period from February 1, 2011 through August 2013 as compensation for storage of the defendant vessel's tender, a 13' Boston Whaler.  (ECF No. 5 ¶ 8.)  The undersigned concludes that the tender is "reasonably needed in the ship's business" because a tender enables the passengers of the vessel, a 44.5' sailboat, to reach land after being moored.  Accordingly, plaintiff is entitled to damages in the amount of $3,875.00 for storage of the Boston Whaler.

Second, plaintiff requests a maritime lien for maintenance and upkeep costs, including $2500.00 for cleaning and debris removal, $350.00 for estimated electric charges, $150.00 for new battery installation, $150.00 for a pump to remove water and maintenance, and a $600.00 yearly upkeep fee.  (ECF No. 1-2.) The FMLA definition of "necessaries" includes repairs and supplies.  46 U.S.C. § 31301(4).  Therefore, plaintiff is entitled to damages in the amount of $3,450.00 for maintenance costs and fees.

Third, Plaintiff requests $530.41 for the cost of "insurance on the vessel" incurred prior to November 1, 2013. (ECF No. 1-2.)  Insurance is a "necessary" under 46 U.S.C. § 31342. Flagship Grp., 771 F. Supp. at 759.  Therefore, plaintiff is entitled to a lien in the amount of $530.41 to recover insurance costs.

Fourth, plaintiff requests amounts attributable to legal costs.  Plaintiff seeks $7,480.00 in contractual legal fees and $1,120.03 in costs. (ECF No. 17, ¶ 8.)   Plaintiff also seeks $752.00 for "taxes paid to Maryland for title transfer."  (ECF No. 1-2.)  According to the Itemization of Vessel Expenses, the taxes were paid prior to November 1, 2013.  (Id.)  Plaintiff's claim for these costs relies on the theory that attorney's fees and costs were part of the contract for

dockage of defendant vessel.  This theory fails, however, because Mr. Vanhuben did not sign the

Slip Lease Agreement, which contained the additional terms not previously agreed upon.  Even

assuming that those terms were part of the contract for dockage, plaintiff has made a claim for a

maritime lien, not breach of contract.  "Terms in the underlying contract for necessaries are not

automatically covered by the resulting lien.  Rather… a maritime lien under the FMLA appears

to only cover the price of necessaries themselves plus interest."  Triton Marine Fuels, Ltd. v.

M/V Pacific Chukota, 671 F. Supp.2d 753, 760–61 (D.Md. 2009).

      Attorneys' fees are not a "necessary" giving rise to a maritime lien because they are not

reasonably needed in the ship's business.  Id., at 761.  Attorneys' services are provided to, and

fees are incurred by, the plaintiff, not the vessel.  Id.  Therefore, plaintiff is not entitled to a lien

for attorney's fees and costs incurred in this action.  Title transfer taxes are costs incurred during

the transfer of legal ownership status of a vessel.   Plaintiff has not offered any authority to

support his request for these costs.  Accordingly, the undersigned concludes that a transfer of

ownership of a vessel, and the taxes associated with transfer are not "reasonably needed in the

ship's business," nor do they further the functioning of the vessel.   Accordingly, plaintiff's

request for a lien for those costs should be denied.

      Finally, plaintiff requests a lien for prejudgment interest in the amount of $3,562.50 and

late fees in the amount of $850.[2]  (ECF Nos. 17, 1-2.)  The Slip Lease Agreement, which was

never signed by Mr. Vanhuben, contained a $25.00 per month late fee and a 1% monthly interest

charge. (ECF No. 1-1.)  A maritime lien covers some pre-judgment interest, but not necessarily

the *contractual* pre-judgment interest rate. Triton, at 764.   An award of prejudgment interest is

almost automatic, and should be denied only under exceptional circumstances.  Loginter S.A. y

---

[2] Plaintiff requests interest on unpaid dockage for the vessel and its tender, but makes no request for prejudgment
interest on maintenance or insurance.

Parque Industrial Agua Profunda S.A. UTE v. M/V Nobility, 177 F. Supp.2d 411, 421 (D. Md. 2001).  The rate of interest used is within the discretion of the court in order to insure that providers of necessaries are fully compensated for their loss. Id.; Triton, at 764.  Although the court does not find that the parties are bound by the terms of the Slip Lease Agreement, including the monthly late fee, the 1% interest rate requested by plaintiff nonetheless fairly compensates plaintiff for his loss.    (See ECF No. 1-2.)  Accordingly, the plaintiff is entitled to pre-judgment interest assessed monthly on the outstanding balance of unpaid dockage fees at a rate of 1%, totaling $3,562.50.

For the foregoing reasons, the undersigned recommends that plaintiff be awarded a maritime lien for: (1) $20,025.00 for dockage of the vessel, (2) $3,450.00 for maintenance and supplies, (3) $530.41 for insurance, and (4) $3,562.50 for prejudgment interest for a total lien of $27,567.91.

## II.     *Custodia legis* expenses

Plaintiff also requests a lien in the amount of $3,494.11 for *custodia legis* expenses. (ECF No. 17, at ¶ 10.)  Following arrest of the vessel, the court issued an Order Appointing Substitute Custodian ("Order") on November 15, 2013, which gave plaintiff responsibility for the safekeeping of the vessel. (ECF No. 10).   The Order allows plaintiff to charge the rate of $20.00 per day and to receive compensation for insuring the vessel through a policy with Allstate Property and Casualty Company.  (ECF No. 10.)  In support of his request for *custodia legis* expenses, plaintiff filed an Affidavit of Custodia Legis Expenses (ECF No. 17-2) detailing the following expenses: $2,880.00 for 144 days of storage at the rate of $20.00 per day; $531.41 for insurance costs; and $83.00 for maintenance costs.  A substitute custodian is entitled to recover expenses incurred for preservation of the vessel.  New York Dock Company v. Steamship

Poznan, 274 U.S. 117, 120–121 (1927).  The right of a substitute custodian to recover these expenses is distinct from a maritime lien; a lien for *custodia legis* expenses depends "not upon the existence of a maritime lien, but upon principles of general application which should govern whenever a court undertakes the administration of property or a fund brought into its custody for the benefit of suitors."  Id., at 120.  A lien for *custodia legis* expenses has priority over other claims against the vessel.  Id., at 121.  Pursuant to the Order, plaintiff insured the vessel at a cost of $531.41, and provided dockage at a cost of $2,880.00.  (ECF No. 17-2, at ¶¶ 3–4.) Plaintiff is entitled to a lien for those costs because they were specifically instructed by the Order for the preservation of the vessel.  (ECF No. 10.)  Plaintiff also incurred $83.00 in costs for a battery charger and extension cord, used to keep the vessel's bilge pumps working to prevent the vessel from filling with water.  (ECF No. 17-2.)  The plaintiff clearly incurred those maintenance costs pursuant to the court's order that he provide routine services for the safekeeping of the vessel. (ECF Nos. 10, 7, at ¶ 5.)  Plaintiff is entitled to recover the $83.00 in maintenance costs that he incurred while serving as substitute custodian.   Accordingly, a priority lien in favor of plaintiff against defendant vessel in the amount of $3,494.41 is appropriate.

### III.    Judicial Sale of Vessel

Plaintiff requests that the court enforce the maritime lien and *custodia legis* expenses by ordering a judicial sale of the defendant vessel.  (ECF No. 17).  A maritime lien arising under the FMLA "grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds." Triton Marine Fules v. M/V Pacific Chukotka, 504 F. Supp. 2d 68, 72 (D.Md. 2007).  Local Admiralty Rule (e)(12) requires the court to set terms and conditions regarding notice of the sale of the vessel.  At the sale, a lienholder may bid at the judicial sale on credit up to the amount of its *in rem* judgment without being required to pay that amount in cash.

See Branch Banking & Trust Co. v. Fishing Vessel Topless, 2013 WL 3732734 (D.Md. 2013).

I recommend that a judicial sale of the vessel be ordered.  Plaintiff is entitled to enforce his maritime lien in the amount of $27,567.91 against the vessel by judicial sale.  Triton, 504 F. Supp. 2d at 72.  Plaintiff is further entitled to recover *custodia legis* expenses in the amount of $3,494.41 at the sale of the vessel.  New York Dock Co., 274 U.S. at 120–121.

## IV.     CONCLUSION

In sum, I recommend that:

1.  Plaintiff's Motion for Default Judgment (ECF No. 17) be granted in part and denied in part.

2.  Plaintiff's request for a maritime lien for contractual attorney's fees and costs be denied.

2.  Plaintiff be awarded a maritime lien against defendant vessel *in rem* in the amount of $27,567.91.

3.  Plaintiff be awarded a *custodia legis* priority lien against defendant vessel *in rem* in the amount of $3,494.41.

4.  The United States Marshal be instructed forthwith to enact a judicial sale of the Sailing Vessel *Smithereens*, her riggings, tackle, engines, etc. consistent with Local Admiralty Rule (e)(12) and the terms outlined in the proposed Decree of Sale, attached hereto as Attachment 1, in order to satisfy Plaintiff's judgment.

5.  Plaintiff be permitted to bid on the vessel at the Marshal's sale on credit up to the amount of $31,062.32, that being the sum of plaintiff's judgment against the vessel and plaintiff's *custodia legis* fees incurred for storing and maintaining the vessel following arrest.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendant at the address listed on plaintiff's First Amended Complaint (ECF No. 5).  Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5.b.


Date: June 13, 2014                       _____/s/_____
                                          Beth P. Gesner
                                          United States Magistrate Judge